UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LARRY A. PETREE,                    :          NO. 1:07-CV-00682
                                    :
        Plaintiff,                  :
                                    :
    v.                              :          **OPINION AND ORDER**
                                    :
                                    :
THE CINCINNATI, NEW ORLEANS,        :
    AND TEXAS PACIFIC RAILWAY       :
    COMPANY, et al.                 :
                                    :
        Defendants.                 :


        This matter is before the Court on Defendant Norfolk
Southern Railway Company's Motion for Summary Judgment (doc. 23),
Defendants Thomas Graham and Masur Trucking Company's Response in
Opposition (doc. 33), Plaintiff Larry Petree's Response in
Opposition (doc. 40), and Defendant Norfolk Southern's Replies in
Support (docs. 48, 52).  Also before the Court are Plaintiff
Larry Petree's Motion for Summary Judgment (doc. 39), Defendants
Thomas Graham and Masur Trucking Company's Response in Opposition
(doc. 50), and Plaintiff Larry Petree's Reply in Support (doc.
40).

**I. Background**

        This case involves claims under the Federal Employers'
Liability Act ("FELA") and state law claims for negligence and
vicarious liability (doc. 1).  The parties agree as to the basic

facts of this case.  On August 24, 2005, Plaintiff Larry Petree ("Petree") was working as a Norfolk Southern Railway Company ("Norfolk Southern") conductor when his crew's locomotive was pulling a single freight car west across Mosteller Road in Sharonville, Ohio (doc. 23).  Petree was riding on the front of the locomotive when it was struck by a southbound truck owned by Defendant Masur Trucking Company ("Masur") and driven by Masur employee, Defendant Thomas Graham ("Graham") (Id.).

Filings indicate the locomotive crew took precautions to stop traffic at the Mosteller Road crossing, including stopping the train at the east edge of the road and sounding the train's whistle and bell signals before proceeding across the tracks (doc. 33).  Filings also indicate the train's headlights were illuminated and the train's ditch lights were blinking at the time of the accident (doc. 40).  The conditions, which are  similarly undisputed, show the weather was clear and the accident occurred in broad daylight (doc. 23).  At the crossing, there are pavement markings, crossbucks, and a painted pavement stop bar; however, no automatic gates (Id.).

The record also reveals numerous facts in dispute among the parties.  In Defendant Norfolk Southern's motion, they allege Petree's engineer began sounding the whistle signals 500-600 yards before reaching Mosteller Road and continued to do so until

reaching the crossing (doc. 23). Likewise, Norfolk Southern argues Petree's testimony reveals all five lanes on Mosteller Road were stopped and traffic was "stacked up" at the crossing (Id.). Norfolk Southern argues only after all motor vehicle traffic had stopped, did Mr. Fyffe and Petree decide to proceed with the crossing after being stopped at the edge of the railroad for roughly a minute (Id.).

In contrast to Co-Defendant Norfolk Southern's assertions, Defendants Graham and Masur argue Petree and his crew failed to ensure all five lanes of traffic had stopped before crossing Mosteller (doc. 33). In support, Graham and Masur rely on Fyffe's testimony, which they state proves all traffic did not even begin to stop until after the engine began to cross the road (Id.). Graham and Masur also argue the train failed to sound its horn continuously through the crossing as required by law (Id.). For this proposition, Graham and Masur rely on a witness stopped "barely fifty feet from the crossing" who only heard "three quick little blows of the horn" (Id.). Similarly, Graham and Masur allege the engine failed to maintain a proper lookout and that the photographs submitted with the filings are an inaccurate portrayal of the accident scene contrary to Norfolk Southern and Petree's assertion (Id.).

Finally, Plaintiff Petree asserts there are facts

in dispute among the parties (doc. 40). Petree argues the train's engineer began blowing the horn and whistle approximately 500-600 yards before the crossing and continued to blow it in sequence until the engine reached the crossing (<u>Id</u>.). Petree also alleges he and his crew made certain all traffic had stopped before proceeding slowly across the grade crossing and that he, Fyffe, and Bartlett went onto the leading platform of the locomotive engine to be able to make hand and eye contact with the traffic (<u>Id</u>.).

In response to these events, Petree brought the following claims: (1) a FELA claim for negligence against Defendant Norfolk Southern; (2) a state law claim for negligence against Defendant Graham; and (3) a state law claim for vicarious liability of Defendant Masur as employer of Graham, as well as negligence in hiring or training Graham (doc. 1).

Also, Defendant Norfolk Southern filed cross-claims against Co-Defendants Masur and Graham, arguing Graham's negligence caused the action, and so if there is a judgment against Defendant Norfolk Southern, it should be entitled to indemnification in whole, or in the alternative, in part (doc. 11). Finally, Defendants Masur and Graham filed a counter cross-claim, arguing Co-Defendant Norfolk Southern is responsible for the accident, and asking for whole or partial indemnification

in the event of a Plaintiff's judgment (doc. 13).

Subsequent to these claims, Defendant Norfolk Southern filed a motion for summary judgment on: (1) Plaintiff Petree's claims against Defendant Norfolk Southern; (2) Defendant Norfolk Southern's cross-claims against Co-Defendants Masur and Graham; and (3) Defendants Masur and Graham's counter cross-claim against Co-Defendant Norfolk Southern. Plaintiff Petree also filed for partial summary judgment on his claims against Defendants Masur and Graham such that this matter is now ripe for the Court's consideration.

## II. Discussion

### A. Summary Judgment Standard

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to

defeat a motion for summary judgment. <u>McDonald v. Union Camp Corp.</u>, 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-55 (6th Cir. 1991).

**B. Defendant Norfolk Southern's Motion for Summary Judgment**

**1. Plaintiff's Claims against Norfolk Southern**

Defendant Norfolk Southern seeks summary judgment on Petree's claims against Norfolk Southern because in its view: (1) Petree failed to prove negligence on the part of Norfolk Southern, and (2) the conduct of Defendants Graham and Masur, as his employer, were the sole cause of the accident (doc. 23). Norfolk Southern also seeks summary judgment on its cross-claim against Co-Defendants Masur and Graham, as well as on Masur and Graham's counter cross-claim against Norfolk Southern (<u>Id</u>.).

Regarding its first argument, Norfolk Southern requests summary judgment on Petree's claim under FELA, 45 U.S.C. § 51, for negligence in Norfolk Southern's work practices, operating practices, and safety practices, as well as negligent failure to provide Petree with a reasonable work place (<u>Id</u>.). Norfolk Southern argues Petree failed to prove negligence on the part of Norfolk Southern because the evidence before the Court is

insufficient to establish negligence (Id.).  In support of its assertion, Norfolk Southern cites Stern v. CSX Transportation, No. C-1-95-1137 (S.D. Ohio 1997), where a railroad was entitled to summary judgment in a grade crossing case involving a motor vehicle-train collision (Id.).  Norfolk Southern alleges this case is on point because there, the engineer plaintiff had control over the train's movement and also made critical deposition admissions like in the instant case (Id.).  In Stern, the court relied on these facts to grant CSX's motion on a no-negligence ground and thus Norfolk Southern argues the instant Court should follow this holding (Id.).

In its second argument, Norfolk Southern argues it is the duty of the Court to hold a railroad not liable as a matter of law in a FELA case when the sole cause of the accident was the conduct of a person other than the defendant (Id.).  Norfolk Southern illustrates an obvious situation of this principle is when an engineer violates orders or ignores signals and runs into the rear of another train (Id. citing Davis v. Kennedy, 266 U.S. 147 (1924)).  Norfolk Southern further argues that where a court can hold a FELA plaintiff's own negligence was the sole cause of his accident, this same result can be reached where a third party's negligent conduct was the sole cause of the accident (Id. citing Rhinelander v. St. Louis-San Francisco, Co., 257 S.W. 2d.

655 (Mo. 1953); <u>Howard v. Atlantic Coast</u>, 66 S.E. 2d 87 (Ga. App. 1951)).

In this regard, Norfolk Southern argues Co-Defendant Graham was both contributorily negligent and his negligence was the sole cause of the accident (<u>Id</u>.). Looking at Graham's contributory negligence, Norfolk Southern states under Ohio law, the Norfolk Southern train had the right-of-way over the Masur truck (<u>Id</u>. citing <u>New York, Chicago, and St. Louis R. Co. v. Kistler</u>, 66 Ohio St. 326 (1902)). Similarly, Norfolk Southern claims Graham's failure to observe and/or heed to the oral and visual warnings of the approaching train render him guilty of contributory negligence, as a matter of law, on both a common law and statutory basis (<u>Id</u>. citing <u>Zuments v. Baltimore & Ohio R. Co.</u>, 27 Ohio St.2d 71, 271 (1971)).

Norfolk Southern also articulates the statutory requirements for looking, listening, and stopping before railroad crossings and asserts that when a train is in hazardous proximity to a crossing or when an audible whistle is present, as was the case here, a motorist must stop (<u>Id</u>. citing Ohio Rev. C. § 4511.62(A)(1)(e)). Relying on their alleged facts, Norfolk Southern argues Graham's actions were a direct violation of the statute and consequently, Graham and Masur are not just contributorily negligent, but solely negligent as a matter

9

of law (Id.).

    In support of its argument, Norfolk Southern cites
numerous cases where a driver's negligence was the sole cause of
their accident (Id. citing Powell v. Consolidated Rail Corp., 31
Ohio App. 3d 219 (1986)).    Based on these authorities and
specifically two cases with allegedly similar fact patterns:
Howard v. Atlantic Coast Line R. Co., 66 S.E. 2d 87 (Ga. App.
1951) and Maret v. CSX Transportation, Inc., 130 Ohio App. 3d 816
(1998), Norfolk Southern submits they should be entitled to
summary judgment as a matter of law (Id.).    In sum, Norfolk
Southern argues they should be granted summary judgment on
Petree's claim against Norfolk Southern, their cross-claim
against Co-Defendants Masur and Graham, as well as on those Co-
Defendants' counter cross-claim against Norfolk Southern.

### 2. Plaintiff Petree's Response in Opposition

    Petree's Response in Opposition (doc. 40) first notes
railroads are held to a much higher standard under FELA than
under common law principles of negligence (Id. citing Urie v.
Thompson, 337 U.S. 163 (1949)).    Petree also states railroads are
held to a non-delegable duty to provide a safe work place for
their employees (Id. citing among others, Payne v. Baltimore &
Ohio RR, 309 F.2d 546 (6th Cir. 1962)).    In support of these
assertions, Petree cites numerous cases where courts have used

this non-delegable duty doctrine to impose liability on railroads in a variety of circumstances (<u>Id</u>. citing <u>Hopson v. Texaco</u>, 383 U.S. 262 (1966)).

In the instant case, Petree argues there is substantial evidence showing Norfolk Southern breached its duty to provide Petree with a safe place to work, noting the Mosteller crossing was known to be dangerous, and was a hazard repeatedly discussed at safety meetings (<u>Id</u>.). Petree also asserts Norfolk Southern cannot avoid blame because a motorist fails to stop, as a railroad has a duty to protect its employees from foreseeable dangers (<u>Id</u>. citing <u>Lilly v. Thompson</u>, 332 U.S. 459 (1947); <u>Bond v. Southern Railway</u>, 762 F.2d 1005 (6th Cir.)). Likewise, Petree argues Norfolk Southern's justifications for not remedying the situation should be rejected because they had the option of not allowing their employees to utilize the grade crossing until the conditions were improved (<u>Id</u>.). Petree notes the harshness of this non-delegable duty rule is softened by the fact the railroad is free to seek indemnification or contribution from a third party, as was done here (<u>Id</u>.).

Finally, Petree argues that FELA, a remedial statute, mandates a jury trial in light of the higher duty imposed on railroads and the minimal burden of proof required by the injured employee (<u>Id</u>. citing <u>Baily v. Central Vermont</u>, 319 U.S. 350

(1943)).  Here, Petree asserts the evidence clearly meets this standard and thus summary judgment must be precluded (Id.).

### 3. Defendants Graham and Masur's Motion in Opposition

In response to Co-Defendant Norfolk Southern's motion, Defendants Graham and Masur allege there is ample evidence of negligence on the part of Petree, the crew, and Norfolk Southern which raise factual issues precluding summary judgment on this matter (doc. 33).  For support, Graham and Masur point to an eye witness at the scene of the accident who heard only three short whistles barely audible from less than 50 feet away (Id).  Thus, Graham and Masur argue that based on this fact, a reasonable jury could find the engine failed to sound its horn continuously through the crossing as required by O.R.C. 4955.32(B)(1) (Id.).

Graham and Masur also argue Norfolk Southern assumed the duty to maintain flaggers and flares at the Mosteller crossing by allowing motorists to become acquainted with their use in past operations (Id.).  Graham and Masur allege no flaggers or flares were present the morning of the accident and therefore Norfolk Southern failed their duty to maintain a proper warning by not providing flaggers, flares, or a notice of their discontinued use to the public (Id.).  As an authority, Graham and Masur cite Ohio Supreme Court case Tazi v. New York Cent. R. Co., 155 Ohio St. 149 (1951), which held that where a railroad

has customarily provided a flagger, the failure to provide one may constitute negligence (Id.). Graham and Masur argue the lack of a horn and flaggers show Norfolk Southern failed to use ordinary care to protect motorists from and warn them of the approaching train (Id. citing Matkovich v. Penn Cent. Transp. Co., 69 Ohio St. 2d 210 (1982)).

Graham and Masur also argue the engine's failure to maintain a proper lookout was contrary to law (Id. citing Louisville & N.R. Co. V. Rochelle, 252 F.2d 730, 736 (6th Cir. 1958)). Graham and Masur state that if the engine crew fails to maintain such a lookout along the right-of-way of the railroad as ordinary care requires while the engine is approaching a crossing, the railroad company is guilty of negligence (Id. citing Wheeling & L.E. Ry. v. Parker, (Ohio Cir.Ct. 1906)). Consequently, Graham and Masur argue it is proper for the jury to determine if the appropriate lookout was kept by the train crew in proceeding across the Mosteller crossing (Id.).

Next, Graham and Masur argue Norfolk Southern failed to consider traffic signals in close proximity to the crossing (Id.). Graham and Masur point to the fact the Mosteller crossing is in very close proximity to a signalized highway intersection and also explain that frequently other traffic control signals in close proximity to railroad crossings are coordinated to turn red

as a train approaches the crossing (Id.). Here, Graham and Masur allege Graham approached a green light as the train was nearing the crossing and that Graham "believed the light could not possibly be green if there was a train" (Id.). Thus, Graham and Masur argue Norfolk Southern could have preempted this situation by coordinating the traffic signals (Id.).

Similarly, Graham and Masur assert the U.S. Department of Transportation Federal Highway Administration ("FHWA") has addressed this sitation and directs railroads should jointly determine the preemption operation at highway-rail grade crossings adjacent to signalized highway intersections with the highway agency with jurisdiction and the regulatory agency with statutory authority (Id. citing FHWA Manual, p.D-7). Graham and Masur allege Norfolk Southern knew the danger of the intersection and of the confusion created by the traffic signal (Id.). Graham and Masur also argue Norfolk Southern was in the best position to determine what additional precautions were necessary and in light of these circumstances, Norfolk Southern should have taken precautions including at least the preemption of the traffic signal and the continuance of flag protection at the crossing during all operations (Id.).

Finally, Graham and Masur assert the Court cannot determine Graham was negligent as a matter of law and his

negligence was the sole cause of the accident because there are numerous factual issues in dispute (<u>Id</u>.). Graham and Masur maintain a reasonable jury could find Norfolk Southern disregarded the safety of motorists and failed to exercise care to motorists and consequently summary judgment in favor of Norfolk Southern should be denied (<u>Id</u>.).

**C. Plaintiff Petree's Motion for Summary Judgment**

**1. Plaintiff's Motion against Defendants Graham and Masur**

Petree filed a motion for summary judgment on his state law claims for negligence against Defendants Graham and Masur and for vicarious liability of Defendant Masur as employer of Graham (docs. 39, 40). In his argument, Petree illustrates his experience with Norfolk Southern and explains he was well prepared for the job (doc. 40). Petree also states Norfolk Southern warned him the Mosteller Road crossing was very dangerous and that he was "nearly run over" when trying to flag the crossing in the past (<u>Id</u>.).

With respect to the instant claims, Petree asserts his train stopped short of Mosteller Road, that he, Mr. Fyffe, and Mr. Bartlett went out onto the leading platform of the locomotive engine, and that he made hand and eye contact with the traffic on Mosteller Road (<u>Id</u>.). Petree states he and his crew then made

certain all the traffic had stopped and only after did they begin slowly across the grade crossing (<u>Id</u>.).  Finally, Petree alleges the train's headlights and ditch lights were on, the train's ditch lights were flashing in an alternative pattern, the engineer was blowing his horn, and the train's bell was sounding at the time of the crossing (<u>Id</u>.).

Petree alleges Defendant Graham's testimony reveals Graham: knew the crossing was there, saw the crossing advance warning sign, saw the railroad markings on the roadway, saw the cross bucks, saw the railroad crossing stop line, saw the traffic in adjacent lanes stopping, and still did not stop (<u>Id</u>.).  As a result, Petree argues Graham's actions as a professional truck driver who should have known better were contrary to both common sense and Ohio State Law (<u>Id</u>.).  Petree cites Ohio Revised Code §4511.62(A)(1)(e) which was explained in <u>Zuments v. Baltimore & Ohio R. Co.</u> 27 Ohio St. Ed 71 (1973) for the proposition:

> The driver of a motor vehicle about to pass over a railroad crossing on a public highway is required to look and to listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose.  Where the incontrovertible physical facts demonstrate that (the driver) did not do so, then such failure was a proximate cause of the collision as a matter of law.

Therefore, Petree alleges because Graham admitted he did not stop and listen, Petree should be entitled to summary judgment on his

16

state law claims of negligence and vicarious liability against Graham and Masur Trucking as a matter of law (<u>Id</u>.).

## 2. Defendants Graham and Masur's Motion in Opposition

In response, Defendants Graham and Masur argue that an analysis of O.R.C. §4511.62(A)(1)(e), applicable law, and the evidence disclosed here show factual issues precluding a finding of summary judgment, as a jury could reasonably conclude Graham was not negligent in any manner (doc. 50). Initially, Defendant Graham incorporates his arguments made in opposition to Norfolk Southern's motion for summary judgment (<u>Id</u>.). Here, Graham argues the train's horn was not sounded in accordance with law and that further possible negligence existed on the part of the railroad (<u>Id</u>.). Graham also notes that in cases subsequent to <u>Zuments v. B. & O. RR. Co.</u>, 27 Ohio St. 2d 71 (1971), Ohio courts have significantly limited the holding of <u>Zuments</u> where there is a visual obstruction involved, which Graham argues was the case here (<u>Id</u>. citing among others <u>Elwell v. CSX</u>, Ohio App. 9 Dist. (1996); <u>Tolliver v. Consolidated Rail Corp.</u>, 11 Ohio St. 3d 56 (1984)).

In sum, Graham argues he stopped and listened, but due to the failure on the part of the railroad, was unable to detect the train (<u>Id</u>.). Graham and Masur allege that becasue of the railroad's negligence to warn motorists, a reasonable jury could

conclude Graham was not negligent as a matter of law and consequently this issue should preclude summary judgment (<u>Id</u>.).

## III. Analysis

Defendant Norfolk Southern states Petree failed to establish negligence on the part of Norfolk Southern and based on the materials before the Court, they should be entitled to summary judgment as a matter of law (doc. 23). Looking first at Petree's claim under FELA, Title 45 U.S.C.S § 54, the Act states: an "employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

Citing this provision under FELA, Petree argues Norfolk Southern had a duty to provide a safe work place for its employees and a duty to protect its employees from foreseeable dangers (doc. 40 citing <u>Lilly v. Thompson</u>, 332 U.S. 459 (1947)). Furthermore, Petree asserts railroads are held to a much higher standard of conduct under FELA than under common law principles of negligence and a railroad has a duty to provide its employees a reasonably safe place to work at all time and at all places of employment (<u>Id</u>. citing <u>Bailey v. Central V. Ry.</u>, 319 U.S. 350 (U.S. 1943)).

The Sixth Circuit in <u>Green v. River Terminal Railway Co.</u>, 763 F.2d 805, 808 (6th Cir. 1985) found the elements for a FELA claim to be: (1) that the plaintiff was injured while in the scope of his employment; (2) that employment was in furtherance of the railroad's interstate transportation business; (3) that plaintiff's employer was negligent; and (4) that plaintiff's employer's negligence played some part in causing the injury for which compensation is sought under FELA. Looking at the reasonable foreseeability of harm and the duty of the railroad, the court in <u>Green</u> also held: "the test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur..." <u>Id</u>. at 808, citing <u>Miller v. Cincinnati, New Orleans & Texas Pacific Railway Co.</u>, 203 F. Supp. 107, 113 (E.D. Tenn. 1962), aff'd, 317 F.2d 693 (6th Cir. 1963).

In <u>Hostetler v. Conrail</u>, 123. F.3d 387 (6th Cir. 1997), another grade crossing case involving a train-car collision, the Court of Appeals found there was sufficient evidence to create a jury issue on the question of whether the railway was negligent in failing to provide more than the minimum statutory warning devices at a railroad crossing. The <u>Hostetler</u> court further held

that a railroad has a duty to use ordinary care to protect the safety of motorists and this duty to use ordinary care may require extra-statutory signals if the crossing is "extra-hazardous" (Id.).

In regard to the need for a jury to determine negligence, the Supreme Court in Bailey v. Central V. Ry., 319 U.S. 350 (U.S. 1943) stated:

> ...the right to trial by jury is a basic and fundamental feature of the system of federal jurisprudence. It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. That method of determining the liability of the carriers and of placing on them the cost of these industrial accidents may be crude, archaic, and expensive as compared with the more modern systems of workmen's compensation. But however inefficient and backward it may be, it is the system which Congress has provided. To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.

Here, Petree asserts there is substantial evidence Norfolk Southern breached its duty to provide him with a safe place to work, noting the Mosteller crossing was known to be dangerous, and was a hazard which was brought up repeatedly at safety meetings (doc. 40). The Court finds this evidence

persuasive and holds there was sufficient evidence presented to create a question for the jury to determine on Norfolk Southern's negligence. The Court further finds there was sufficient evidence to permit a reasonable jury to find by a preponderance that the accident occurred because of Norfolk Southern's negligence in maintaining an "extra-hazardous" railroad crossing and its failure to exercise ordinary care. See Bailey at 393.

Looking at Defendant Norfolk Southern's cross-claim against Graham and Masur and those Co-Defendants' counter cross-claim against Norfolk Southern, the Court similarly finds a material dispute of fact for the jury to determine (doc. 33). Co-Defendants Graham and Masur argue Norfolk Southern negligently failed to maintain flaggers and flares at the Mosteller crossing after motorists had become acquainted with the practice (Id.). Also, Graham and Masur allege Norfolk Southern breached their duty of care by failing to consider the traffic signals in close proximity to the crossing (Id.).

The court in Petersen v. Union Pac. R.R. Co., 567 F. Supp. 2d 1043, 1052 (C.D. Ill. 2008) allowed plaintiffs to proceed past summary judgment on their theory that Union Pacific breached its duty to slow train traffic or post flaggers due to a malfunctioning of the Warning System. Similarly, the court in Fegler v. Union Pac. R.R. Co., 2006 U.S. Dist. LEXIS 86796 (D.

Wyo. July 20, 2006) found a railroad could be negligent by not providing flaggers. In relevant part, the <u>Fegler</u> court held: "it is clear that the railroad made certain choices about the crossing. The railroad chose not to employ flaggers even though the crew in the other engine could have come down to flag the crossing while the eastbound train came through." <u>Id</u>.

Here, the Court finds Co-Defendants' arguments persuasive and agrees that given the instant facts, a reasonable jury could conclude negligence on the part of Norfolk Southern by failing to provide flaggers or a warning in spite of the alleged danger of the intersection. As a result, the Court holds Norfolk Southern's motion for summary judgment improper on both Petree's claims against Norfolk Southern and on Norfolk Southern's cross-claims against Masur and Graham. Likewise, the Court finds Norfolk Southern's motion for summary judgment on Masur and Graham's counter cross-claim improper given the aforementioned analysis.

Finally, looking at Petree's motion for partial summary judgment on his claims against Defendants Masur and Graham, the Court finds numerous factual issues, such as the sounding of the horn and further possible negligence on the part of the railroad in dispute, all of which preclude summary judgment on the issue of that Graham and Masur's negligence (doc. 50).

For example, <u>Petre v. Norfolk Southern Ry.</u>, 458 F. Supp. 2d 518, 527 (N.D. Ohio 2006), the court found that "in Ohio, and across this country, motorists and Railways owe mutual and reciprocal duties of care to one another upon approaching a crossing." For this reason, the court in <u>Petre</u> found that "when undertaking the viability of tort claims arising from a collision at a railroad crossing, the court must consider the rights and liabilities of both the Railway and the motorist." <u>Id</u>. The court further went on to recognize that because of the immutable laws of physics, a Railway will not be liable for a crash when a driver fails to effectively look and listen for a train upon approaching a crossing. <u>Id</u>. Finally, the court in <u>Petre</u> explained how Ohio codified this rule by requiring a motorist to stop within 50 but not less than 15 feet from the nearest rail of a crossing when an approaching train is either emitting an audible signal, or is plainly visible and in close proximity to a crossing." <u>Id</u>. citing Ohio Rev. C. §4511.62; <u>Zuments v. Baltimore & Ohio Ry. Co.</u> 27 Ohio St.2d 71.

Likewise, the Court recognizes material facts in dispute when looking at the aforementioned requirements. The sounding of the horn is in question, as is the visibility of Graham's driving lane, among other facts. Consequently, the Court holds a reasonable jury could find that due to the negligence of the railroad to warn motorists and safely prepare

23

the crossing, Graham and Masur were not negligent as a matter of law. Thus, the Court finds Petree's motion for summary judgment improper.

**IV. Conclusion**

Accordingly, the Court DENIES Norfolk Southern's motion for summary judgment on Petree's claims against Norfolk Southern and Norfolk Southern's motion for summary judgment on their cross-claims against Defendants Masur and Graham and DENIES Norfolk Southern's motion for summary judgment on Defendants Masur and Graham's counter cross-claims against Norfolk Southern (<u>Id</u>.). Also, the Court DENIES Petree's motion for partial summary judgment on his claims against Defendants Masur and Graham (doc. 39). Finally, the Court SCHEDULES a final pre-trial conference in this matter for September 17, 2009 at 3:00 P.M. and trial date of October 13, 2009.

SO ORDERED.

Dated: July 23, 2009          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge